## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **JANE DOE,** | : | |
| | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 18-5309** |
| **MANOR COLLEGE,** | : | |
| | : | |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                                      AUGUST 17, 2020

### INTRODUCTION

Disturbing facts generally make for especially difficult cases. This litigation again proves that point.

In the fall of 2016, Ms. Doe alleges she was sexually assaulted while attending Manor College as a residential student. She also contends that Manor College paid no mind to her allegations and instead retaliated against her for complaining about its response. On the basis of this treatment, Ms. Doe asserts Title IX discrimination and retaliation claims.

Before the Court are cross-motions for summary judgment and a motion in limine. Ms. Doe seeks summary judgment as to the notice prong of her discrimination claim, as well as summary judgment in her favor on the retaliation claim, in its entirety. Manor College seeks to dismiss both claims for Ms. Doe's alleged failure to demonstrate certain elements of the claims. Ms. Doe also seeks the preclusion of Manor College's psychiatric expert.

The Court must evaluate the sufficiency of the factual record presented to determine if material disputes exist for resolution by a jury. For the reasons that follow, the Court grants Ms. Doe's motion for summary judgment with respect to (1) the notice prong of the discrimination claim and (2) the protected activity and adverse action prongs of her prima facie retaliation case.

1

The Court grants Manor College's motion insofar as there are no disputes of material fact with respect to its burden of production on the retaliation claim. As to all other aspects of the claims, the Court denies the motions. Finally, the Court denies Ms. Doe's motion in limine.

## BACKGROUND[1]

### I.     The underlying alleged sexual assault.

Jane Doe is a former undergraduate student at Manor College. She first enrolled at the school in the fall of 2016. Manor College, located in Jenkintown, Pennsylvania, is a private Catholic institution. Ms. Doe lived on campus while a student at the school. The parties do not dispute that Manor College received federal funding.

During the early morning hours of September 21, 2016, Ms. Doe reported an incident of sexual assault to Resident Coordinator Lynn Wales. The alleged assault occurred four days prior and purportedly involved Kenyadda Rice, a resident assistant, resident Marquise Hardy, and Mr. Hardy's cousin, Josh Manor. Mr. Rice and Mr. Hardy at the time also were students at Manor College. The complaint of sexual assault was also reported to Director of Student Engagement Allison Mootz and the school's Chief of Public Safety, William Pepitone. Manor College asserts the sexual encounter was consensual.

Ms. Doe filed an incident report with the school related to the underlying complaint of sexual assault. In that incident report, Ms. Doe states that while in Mr. Rice's dorm room, she was drinking milkshakes with the three men. She states that the men sought to coerce her into sexual

---

[1]     The factual disputes in this case are sprawling. For instance, there are multiple accounts of the sexual assault that forms the underlying basis of Ms. Doe's claims in this case. The Background for this Memorandum is based on a fair reading of both parties' statements of facts to the extent they can be reconciled at this point. To the extent that there are factual disputes material to Ms. Doe's claims, the Court notes them and addresses them in greater detail in the Discussion section of this Memorandum. As is customary at this stage of the proceedings, the Court disregards those factual allegations that the parties make without any evidentiary support from the record, and rejects the parties' endeavor to have this Court make credibility determinations and otherwise weigh the evidence.

2

activity to which she did not consent, and because she was nervous, she started audio recording the encounter on her phone. She states that one of the men touched her vagina, and the men exposed their genitalia to her. Ms. Doe also believed that at one point, two of the men had left the room. She remained with Mr. Rice who asked if she wanted to "do [sic] with other people so he could watch. . . . [Ms. Doe states she] was hesitant and said eh, maybe, sure." Doe Incident Report, Ex. 9, Def.'s Mot. for Summary Judgment. She then goes on to describe "[h]e had my eyes covered but from the corner of his hands I saw him signal [the two other men,] and they came in the room. Afterward [Ms. Doe] [ ] made out with Josh for Kenyadda to watch and all three of them" masturbated. *Id.*

In her deposition, Ms. Doe testified to the encounter and as to writing her incident report in a manner that would "lessen the blow." Doe Dep., Ex. 1, Def.'s Mot. for Summary Judgment at 77:9-23. Ms. Doe testified that after the men took their pants off, they blocked Mr. Rice's dorm room door. According to Ms. Doe, the alleged assailants mentioned "they had Bill Cosby'd [her] drink and that they were just trying to have some fun. And they suggested [Ms. Doe] also get naked." *Id.* at 47:10-13. Ms. Doe refused. *Id.* She testified that thereafter, Mr. Hardy forcibly kissed her, pushed her on the bed, and removed her clothes. Ms. Doe also stated all three men, without her consent, touched her inappropriately. Mr. Hardy and Mr. Manor "fondled and touched [her] chest[,] butt[,] and genitalia." *Id.* at 50:9-14. Ms. Doe testified that the men performed digital intercourse on her, and that after the alleged assailants placed a pillow over her face, she passed out. Ms. Doe regained consciousness and saw a phone in Mr. Hardy's hand. Ms. Doe testified that another woman had entered the room, screamed, and then ran out.

The record reflects that after leaving Mr. Rice's room, at some point, Ms. Doe and her friend, Diamond Hairston, began getting ready for a party, and later that evening, Ms. Doe went to a night club. Mr. Hardy and his cousin also went to the party.

A photograph of Ms. Doe circulated without her consent days after the incident. After confronting Mr. Hardy about the photograph, he denied taking it.

Two police reports reflect that Ms. Doe spoke to the Abington Township Police Department regarding the incident on a few occasions. The police report dated September 21, 2016 states that on the night of September 17, 2016, Ms. Doe agreed to engage in sexual activity with the three men. It also involves details about the nude photograph of Ms. Doe, and her alleged desire that the police not get involved. The police report dated December 9, 2016 states that Ms. Doe sought to understand why the police had not pressed any charges after she had reported to the police previously that she was sexually assaulted. Ms. Doe also visited the police station on December 13, 2016, and described a nonconsensual encounter with the men. During that interview, she said she had also been the victim of sexual assault as a child.

## II.     Manor College's response to the sexual assault complaint.

The College's response to the complaint of sexual assault, and the events that took place after that initial complaint are material to the claims here, and thus, are the subject and focus of this Court's consideration.[2]

---

[2]     Indeed, while the parties litigate the merits of the underlying sexual assault complaint, seeking a referendum by this Court as to whether to believe Ms. Doe or the men and Manor College as to whether the assault in fact took place, *see, e.g.*, Def.'s Mot. for Summary Judgment, p. 2 n. 1 ("Doe's version of what occurred on September 17, 2016 has changed several times. Her version of events as described to the College and the Abington Township Police Department on September 21, 2016 vary greatly from the allegations set forth in her Complaint and deposition testimony, in which she described a non-consensual violent assault."), that request is only tangential to the Court's determination on the sufficiency of the factual record with respect to the parties' positions on Ms. Doe's Title IX claims. To the extent that the facts related to the underlying sexual assault matter, they matter insofar as they can support either party's affirmative or defensive case with respect to whether the claims may proceed to trial.

4

On the same day that Resident Coordinator Ms. Wales, Director of Student Engagement Ms. Mootz, and Chief of Public Safety Mr. Pepitone were made aware of Ms. Doe's complaint, she was informed of the College's provision for victim's services. Manor College also contacted law enforcement, and as noted, Ms. Doe spoke to officers of the Abington Township Police Department. While Ms. Doe was at the police station, Manor College sent letters to both Mr. Hardy and Mr. Rice stating that they would be under immediate suspension from the resident hall, all club activity, and work obligations. There is only one residence hall on the Manor College campus. Mr. Hardy was also asked to temporarily switch out of Ms. Doe's chemistry class, to another chemistry section.

On September 26, 2020, Manor College's Code of Conduct Committee held two consecutive hearings related to the underlying sexual assault complaint lodged by Ms. Doe. The members of the Committee that oversaw the hearings that involved accusations against Mr. Rice and Mr. Hardy included voting members Janice Salerno, Diane Saridakis, and a student representative, Destinye Andrews. Ms. Mootz was also present at the hearings as the hearing officer, and Ms. Christina Prokopovych was present, serving as the chair of the Code of Conduct Committee.

At the hearings, Ms. Doe testified to a nonconsensual sexual encounter. At Mr. Rice's hearing, Mr. Rice was present when Ms. Doe gave her statement of the incident, including a description that Mr. Hardy had stated he "would have made [her] swallow the whole pill and not have put something in [her] drink." Tr. of Rice Hearing, Ex. 13, Def.'s Mot. for Summary Judgment, p. 12. The transcript of the hearing reflects Mr. Rice repeatedly interrupting Ms. Doe as she gave her statement. Ms. Doe also informed the Committee of the photograph of her circulating around campus and the audio recording she made of the encounter. The Committee

heard from Mr. Rice as well. He represented that Ms. Doe's statement was false, that she was taking Snapchats in the police car the day of the underlying incident, and that Ms. Doe went to a club after the incident where Mr. Hardy and his cousin were also present. According to Mr. Rice, Ms. Doe told him she "was going to Bill Cosby [him and asked him] how much money [he] had." *Id.*, p. 29. The transcript of the hearing also reflects that Ms. Doe was not present when Mr. Rice gave his counter-statement to the Committee.

At Mr. Hardy's hearing, which took place on the same day as Mr. Rice's, Ms. Mootz read Ms. Doe's incident report related to the underlying sexual assault complaint and Mr. Hardy's alleged part in it, including recording and photographing Ms. Doe without her consent. Mr. Hardy gave his statement about the incident. Ms. Doe's friend, Diamond Hairston, also gave a statement about her interactions with Ms. Doe and Ms. Doe's conduct after the alleged assault. According to Manor College, Ms. Hairston's statement described that Ms. Doe acted in ways that contradicted that she had been sexually assaulted. Ms. Doe was not present in the room during these statements. Ms. Doe then gave live testimony, but was not permitted to present evidence of the audio recording she made during the encounter at either of the two hearings because the College determined her recording was taken without the consent of the men. Mr. Hardy denied taking any photograph of Ms. Doe.

After the hearings were held, the Code of Conduct Committee determined that neither Mr. Rice nor Mr. Hardy had sexually assaulted Ms. Doe. Specifically, by way of letters dated September 27, 2016 and September 28, 2016, both Mr. Rice and Mr. Hardy were sanctioned for failing to supervise a guest (Mr. Manor) under school policy. There also was no determination that a lewd photo was taken of Ms. Doe by one of the men. As a result, the men lost guest privileges

for thirty (30) days. Their temporary residence hall suspension was lifted, and Mr. Hardy returned to Ms. Doe's chemistry class.

On September 29, 2016, the chair of the Code of Conduct Committee sent an email to Ms. Doe with the Committee's findings. In response, Ms. Doe expressed her disagreement with the determination. She reiterated that she was coerced into sexual activity, and took issue with the photograph taken of her. Ms. Doe also complained of the lack of any accommodations made for her despite her having to attend the same class as one of the men and live in the same residence hall as her alleged attackers. Ms. Mootz responded to Ms. Doe's email indicating Ms. Doe had not articulated a basis for an appeal and directed Ms. Doe to the proper appeal process.

The following day, namely, October 1, 2016, Mr. Rice was terminated as a resident assistant, with citations to repeated issues including the guest policy violation on September 17, 2016. On the same day, Ms. Doe formally appealed the determination made with respect to her claim of assault by contacting via email Dean of Students, Sister Marie Francis Walchonsky. Sister Walchonsky then forwarded the email to Ms. Mootz. In her deposition, Ms. Mootz testified as to Sister Walchonsky being incapable of hearing the word sex, stating the following.

> She can't handle seeing the word sex, thinking about sex. It's not in her capacity to handle that. She was 80, 81 at the time. She's been a nun since she was 18 years old. And it's – she just mentally cannot handle hearing that. So, that's why she has other hearing officers and Code of Conduct chairs to handle situations like that, handle all of student conduct. . . . I think her religious background makes it difficult for her to understand. . . . I don't think she can even think about it. You visibly see her, if you mention it or talk about it, she gets very agitated and upset and nervous and anxious. It's just not – it shouldn't be that confused, she's a nun, it's nothing she's ever experienced in her life.

Mootz Dep., Ex. 7, Def.'s Mot. for Summary Judgment at 38-39.

7

Ms. Doe's appeal related to the alleged sexual assault determination was denied on October 5, 2016, by way of a letter from Sheila Gillespie, the Vice Chair of the Student Conduct Appeals Committee, based on the lack of any grounds for an appeal, namely that all proper hearing procedures were followed and there was no new admissible evidence. Ms. Doe's request for video footage from the night of the alleged offense was also denied. Ex. 22, Def.'s Mot. for Summary Judgment. In another email Ms. Doe sent to Ms. Gillespie that same day, Ms. Doe claimed that her complaint was not handled properly, and she also expressed her discomfort with having to be in the same class and in the same residence hall as the alleged assailants. Ex. 45, Def.'s Mot. for Summary Judgment.

Two days later, the president of the school, Jonathan Peri, spoke to Mr. Rice and expressed he would "get through this . . . [he had] to keep going. . . . if [Ms. Doe] causes [him] problems, … report it." Ex. 4, Pl.'s Opp'n to Def.'s Mot. for Summary Judgment.

### III.    Manor College sanctions Ms. Doe.

Beginning within days of her complaint to the school, Ms. Doe was written up and sanctioned for several violations of the school's Code of Conduct policy. On September 23, 2020, incident reports were made related to Ms. Doe's alleged altercations with other girls in her dormitory. The incident reports state that Ms. Doe demonstrated aggressive behavior and was non-compliant with orders to disperse. September 23, 2016 Incident Reports, Ex. 29, Def.'s Mot. for Summary Judgment. They also state that despite such orders, Ms. Doe was found again knocking on a resident's door followed by additional verbal altercations that took place. *Id.* While the parties dispute whether Ms. Doe actually received the following letter, Manor College has produced a formal letter which appears signed by Resident Coordinator Ms. Wales on behalf of the school, placing Ms. Doe on probation for 60 days, in part due to her altercations and Code of

8

Conduct violations for disrespect for authority and aggressive behavior. The letter also notifies Ms. Doe she will be required to work with a resident assistant to conduct two education programs related to student success, awareness, or engagement. Wales Letter, Ex. 29, Def.'s Mot. for Summary Judgment.

Ms. Doe testified at her deposition to a different explanation of the altercations, describing:

> [A] group of girls had got upset. They had brung [sic] up during [a floor] meeting . . . the incident of the assault and the fact that I reported it and . . . thinking I was trying to get Marquise and Kenyadda in trouble because they were friends and they were cool with a lot of people in the campus. So I got into an argument with them. And I didn't want to talk about it with the incident being brought up in an open[ ] setting. And there were just threats given to me to hurt me between girls because I came forward.

Doe Dep., Ex. 1, Def.'s Mot. for Summary Judgment at 106:13-24. According to Ms. Doe, she attempted to calm the students. *Id.* at 109:25-110:6.

On September 30, 2016, another incident report was made related to Ms. Doe's violation of the Code of Conduct for recording the underlying alleged sexual assault. On October 4, 2016, Doe was sanctioned for having made that recording. According to Manor College, because she made the recording without permission of the other participants, and because she failed to appear at the hearing related to the audio recording violation, Ms. Doe was fined $50 and required to do ten hours of community service.[3] Ms. Doe was also warned that additional violations of the Code of Conduct could lead to more serious sanctions and possible dismissal from the residence hall.

Two days later, Ms. Doe sent an email to the dean of students appealing the sanction related to the audio recording. She stated she recorded the encounter because she feared for her safety. Ms. Mootz responded to Ms. Doe on behalf of the dean of students and stated the school's position

---

[3]    The record reflects that Ms. Mootz eventually told Ms. Doe she would waive the fine because Ms. Doe could not attend the hearing due to a conflicting doctor's appointment.

9

that there was no additional opportunity for an appeal. Ms. Mootz also cautioned Ms. Doe "to keep conversations about the case private. If [Ms. Doe] ha[d] further issue with the case, it should be directed to [Ms. Mootz] and/or the Code of Conduct Chair." Mootz E-mail, Ex. 24, Def.'s Mot. for Summary Judgment.

At some point, Ms. Doe was fined $150 for disorderly conduct, disrespect for authority, and probation violation which the school represents occurred on October 25, 2016. On that date, according to Ms. Doe, a resident assistant came to her door asking for her to turn her music down. The resident assistant returned with another resident assistant, telling Ms. Doe to turn down her music. Ms. Doe asserts she complied after the first request, but that the two resident assistants took issue with her loud music because they were friends of Mr. Rice. Ms. Doe testified at her deposition that it felt as though Mr. Rice's friends "were just kind of . . . out to get me." Doe Dep., Ex. 1, Def.'s Mot. for Summary Judgment at 116:6-117:12.

Manor College also sanctioned Ms. Doe for a purported violation of the guest policy while on probation. This violation allegedly occurred on November 7, 2016.

Four days later, Ms. Doe emailed Ms. Prokopovych about the charges related to disorderly conduct. In that email, Ms. Doe indicated she would be contacting outside sources "to review the things that [she is] being wrongfully sanctioned for[.]" Ex. 56, Def.'s Mot. for Summary Judgment. Ms. Doe also complained to Mr. Peri, informing him that she was considering a potential civil lawsuit against the school because of its wrongful conduct.

On November 18, 2016, Manor College permanently evicted Ms. Doe from the college dormitory, citing Ms. Doe's "continued corresponden[ce] with individuals in and across the community instead of following institutional policies and procedures on how to properly address Code of Conduct concerns." Ex. 19, Def.'s Mot. for Summary Judgment. Manor College also

10

cited Ms. Doe's previous multiple sanctions. *Id.* Ms. Doe was warned in the same letter that the school may take appropriate civil action against her if she continues in what the College contends was her inappropriate behavior.

According to Ms. Doe, within days, she attempted to commit suicide. Sometime that month, she also withdrew from the College.

On December 1, 2016, Mr. Peri informed Ms. Wales, Ms. Mootz, Mr. Pepitone, Ms. Prokopovych and others that Ms. Doe had retained counsel. On December 8, 2016, Ms. Wales informed Mr. Peri that Ms. Doe had told other students she was suing Manor College and had offered to pay them to testify on her behalf. Mr. Peri asked for incident reports related to these alleged bribery attempts. On December 8 and 12, 2016, Mr. Rice and a student named Cathelyne Etienne wrote incident reports to that effect. Mr. Rice stated he was told by other students Ms. Doe tried to bribe them to make a statement on her behalf. Ms. Etienne stated Doe offered her money to make a statement for her.[4] Mr. Peri also emailed Ms. Doe's then attorney informing him that students had approached the College with information that they had been offered a bribe by Ms. Doe to make a statement for her. To this attorney, he stated that "Manor College w[ould] also bring whatever civil actions [were] necessary to evidence [Ms. Doe's] frivolous claims, and by virtue of [his] representation, [counsel's] frivolous suit[.]" Ex. 23, Pl.'s Mot. for Summary Judgment.

By the end of December, in response to Ms. Doe's request seeking a refund of her dorm room deposit, Mr. Peri informed Ms. Doe she must cease all communications with the school because she had counsel. He instructed, "[i]f you have no attorney and agree to withdraw any and all claims and potential claims against the college, and any and of its personnel, then maybe we

---

[4]      Ms. Doe correctly contends these statements are hearsay. She also argues the statements are not material to her claims. Pl.'s Response to Def.'s Mot. for Summary Judgment, ¶76c.

can correspond. [E]ven if you agree to those things we will need to have it in writing and prepared in the form of a release and signed by you. . . . This is not an offer; you cannot accept. . . . If you persist with communications with anyone at the college, then we will seek all available civil remedies against you." Ex. 21, Pl.'s Mot. for Summary Judgment.

In March of the following year, in response to an inquiry made by the Department of Education Office of Civil Rights ("OCR") related to Ms. Doe's complaint, Mr. Peri wrote to the OCR stating Ms. Doe engaged in attempted fraud, entrapment, and bribery, and that Doe's complaint was submitted in bad faith. He also asked OCR for certain FOIA information related to whether post-secondary institutions in Title IX cases were directed to speak to law enforcement about alleged criminal conduct by the complainant.

## LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact finder could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson,* 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson,* 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

## DISCUSSION

Manor College seeks the dismissal of both of Ms. Doe's discrimination and retaliation claims under Title IX. It seeks dismissal of the discrimination claim on the basis that Ms. Doe has not demonstrated two elements of the claim: deliberate indifference and causation. It also seeks dismissal of the retaliation claim challenging Ms. Doe's ability to meet her burden on her prima facie case as well as to show pretext. The parties also contest whether Ms. Doe has proffered direct evidence or circumstantial evidence with respect to the causation prong of her claim.

13

On the other hand, Ms. Doe seeks summary judgment as to the notice prong of her discrimination claim, as well as on the entire retaliation claim. Because Manor College concedes the notice prong of the discrimination claim, the Court discusses the remaining disputes in turn, namely, (1) whether Ms. Doe can show deliberate indifference and causation as to her discrimination claim, and (2) whether there are triable issues with respect to Ms. Doe's claim of retaliation.

## I.      Discrimination claim under Title IX

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX's protections encompass student-on-student sexual harassment. In *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999), the United States Supreme Court created an implied private right of action pursuant to Title IX for such sex-based harassment. Jane Doe asserts she was discriminated in this way, and seeks to prove this discrimination on the basis of the College's deliberate indifference to her claims.

To assert a claim of discrimination on the basis of deliberate indifference, a plaintiff must show that (1) the defendant received federal funds; (2) sexual harassment occurred; (3) the harassment took place under circumstances in which the school exercised substantial control over both the harasser and the context in which the harassment occurred; (4) the defendant had actual knowledge of the harassment; (5) the harassment was so severe, pervasive, and objectively offensive that it could be said to have deprived the victim of access to the educational opportunities or benefits provided by the school; (6) the defendant was deliberately indifferent to the harassment; and (7) the defendant's deliberate indifference subjected the plaintiff to harassment, i.e. caused the

14

plaintiff to undergo harassment or made the plaintiff liable or vulnerable to it. *Id.* at 644-45. As noted, Manor College seeks dismissal of Jane Doe's claim for her alleged failure to meet the last two elements.

To demonstrate Manor College was deliberately indifferent and defeat summary judgment on that element, Ms. Doe must raise a factual inference that Manor College's "response to the harassment or lack thereof [wa]s clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. Deliberate indifference refers to "an official decision [made by the school] not to remedy the violation." *Gebster v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Courts look to the totality of the circumstances when determining deliberate indifference, and "deliberate indifference will often be a fact-based question, for which bright line rules are ill-suited." *Doe ex rel. Doe v. Coventry Bd. of Educ.*, 630 F. Supp. 2d 226, 235 (D. Conn. 2009).

The deliberate indifference "must [then], at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Davis*, 526 U.S. at 645. However, in making its determinations today, the Court is mindful that "in holding that deliberate indifference to known acts of harassment may amount to an intentional violation of Title IX, capable of supporting a private damages action in the context of student-to-student harassment, the Supreme Court made clear that school districts were not required to 'purge' their schools of 'actionable peer harassment' or 'engage in particular disciplinary action.'" *G.C. ex rel. Counts v. N. Clackamas Sch. Dist.*, 654 F. Supp. 2d 1226, 1237 (D. Or. 2009) (citing *Davis*, 526 U.S. at 648).

*a.  The deliberate indifference element.*

    i.  Parties' arguments

The parties' specific arguments made in support of their respective positions on this element are numerous, and are not entirely responsive of each other. However, they may be fairly summarized as follows.

Manor College claims Jane Doe cannot bear her burden on the deliberate indifference prong because (1) the school took prompt and clearly reasonable actions after she lodged her initial complaint of sexual assault; (2) as a matter of law, the claim that the underlying Code of Conduct hearings related to the complaint were faulty fails; furthermore, the hearings were adequate; (3) Ms. Doe cannot rely on Title IX regulations and Department of Education guidance to establish deliberate indifference; and (4) Ms. "Doe's claims of subsequent, non-gender based harassment fail as a matter of law." Def.'s Mot. for Summary Judgment, p. 13; Def.'s Memorandum of Law in Support of Def.'s Mot. for Summary Judgment, pp. 29-30.

Manor College cites the following actions it took in response to Ms. Doe's complaint in support of its assertion that it adequately handled the sexual assault complaint:

- After Ms. Doe reported the allegations to Resident Coordinator Ms. Wales in the early morning hours of September 21, 2016, Ms. Wales immediately contacted Director of Student Engagement Ms. Mootz and advised her of the complaint.

- On the same day, Ms. Mootz, Ms. Wales, and the Chief of Public Safety, Mr. Pepitone, met with Ms. Doe to discuss her report.

- According to Manor College, Ms. Doe was informed of the available victim's services. Jane Doe also met with the College's counseling department on November 16, 2016, and the counselor made an appointment for Ms. Doe to see an outside therapist.

- Manor College determined it would be appropriate to make a report to the local police department, and then informed Abington Township Police Department of Ms. Doe's complaint.  Jane Doe spoke to members of the police department.

- On the same day that Ms. Doe reported the incident to Manor College, Mr. Rice and Mr. Hardy were informed of the complaint against them. According to the College, interim sanctions were imposed, and both individuals were immediately suspended from the residence hall and could not return until after a formal disciplinary hearing.

- Mr. Hardy was instructed to attend a different section of a chemistry class because Ms. Doe was in the same section.

- The College held two formal hearings concerning Jane Doe's allegations on September 26, 2016 with respect to Mr. Rice and Mr. Hardy. At the hearings, Ms. Doe was permitted to offer evidence.

- Although the College did not find Ms. Doe's version of the events credible, it implemented sanctions on the male students by removing their guest privileges for one month.

- The College also terminated Mr. Rice as a resident assistant.

- The College terminated the resident assistant Ms. Doe initially told her report to, who the College asserts failed to report the incident to the resident coordinator.

Def.'s Mot. for Summary Judgment, pp. 15-16. Manor College also asserts that Ms. Doe did not come into contact with any of her assailants after the hearings related to the alleged sexual assault, and she was not further subjected to additional sexual assault.

In response, Ms. Doe argues deliberate indifference on the basis that "Manor remained idle in the face of [Ms.] Doe's safety concerns, failed to train the employees who responded to [Ms.] Doe's report of sexual assault, treated [Ms.] Doe with distinct hostility different than the assailants and starkly similar to other victims of sexual assault, lied to the U.S. Department of Education during its investigation into violations of [Ms.] Doe's civil rights, failed to address [Ms.] Doe's report of the assailant's distribution of a nude photo without her consent, and took affirmative steps to bury [Ms.] Doe in alleged disciplinary infractions as she experienced observable emotional distress[.]" Pl.'s Opp'n to Def.'s Mot. for Summary Judgment, p. 5.

The Court need not address all of the arguments for purposes of assessing Manor College's contention that Ms. Doe cannot show the requisite deliberate indifference. For the reasons that

follow, and considering all of the factual circumstances, the Court finds that Ms. Doe has raised the requisite factual dispute as to this element of her discrimination claim.

> ii. Whether Manor College's actions were clearly unreasonable in light of known circumstances.

The record reflects Manor College failed to make accommodations for Ms. Doe when she raised safety concerns after the school determined no sexual assault had occurred. After her repeated requests for accommodations to Manor College officials, specifically with respect to Mr. Hardy's attendance in her chemistry section, and Mr. Rice and Mr. Hardy's continued residence in the only residence hall on campus, Manor College failed to make any accommodation whatsoever. Ms. Doe testified in her deposition to seeing Mr. Hardy in class which made her "feel like [she] was just kind of a joke. [She] felt afraid and [she] felt intimidated. [She] couldn't focus in class[, and] didn't want to go to class. He would stare at [her]. [Her] grades went down." Doe Dep. at 139:14-141:15. Jane Doe also testified to feeling like she "didn't want to go anywhere outside [her] dorm room" after seeing Mr. Rice around campus. *Id.*

On these facts alone, a jury could determine that the school acted with deliberate indifference. A failure to accommodate a student's safety concerns, for instance, by failing to separate a student from her alleged assailant, may amount to deliberate indifference. In *Coventry Board of Education, supra,* the district court determined there to be a triable issue as to whether the school acted with deliberate indifference where the alleged victim had made requests for accommodations, and the school refused to act immediately, failing to remove the plaintiff's assailant from her lunch period and class, and failing to limit his participation in any school activities, until the assailant's arrest months later. 630 F. Supp. 2d at 235. In a factually analogous case, the district court in *Matthews v. Nwankwo,* 36 F. Supp. 3d 718 (N.D. Miss. 2014), determined there was a factual dispute as to whether the school acted with deliberate indifference to the

plaintiff's complaints where the plaintiff had alleged that her professor sexually harassed her, but the school failed to permanently separate the plaintiff from her professor after a temporary separation of plaintiff from his class. *Id.* at 725-26. And in the *E.N. v. Susquehanna Tp. Sch. Dist.*, No. 09-1727, 2011 WL 3608544 (M.D. Pa. July 5, 2011), *report and recommendation adopted by* 2011 WL 3608490 (M.D. Pa. Aug. 16, 2011), the court determined a jury could find the school acted with deliberate indifference when it failed to act on known circumstances of harassment, in part, due to the continued presence of the assailant. The court noted that after the plaintiff had complained of sexual assault, there was evidence of school officials disbelieving her, showing their support for the assailant, and making no efforts to separate the assailant or the assailant's wife from the student. Here, the record shows Manor College did not separate Mr. Rice and Mr. Hardy from Ms. Doe, either by removing them from the residence hall or from her class permanently.

A jury could also find that Ms. Doe was being harassed by friends of Mr. Rice, and perhaps, even Mr. Rice, after she made the complaint of sexual assault. In December 2016, Mr. Rice wrote an incident report about Ms. Doe, accusing her of bribery for asking other students to make a statement on her behalf. Furthermore, there is a triable issue as to whether Ms. Doe suffered from post-complaint incident reports related to purported loud noise and altercations with other students because of her complaint about Mr. Rice and Mr. Hardy. A jury may consider the import of all of these facts when determining whether, and if at all, Manor College acted with deliberate indifference when it failed to separate Mr. Rice and Mr. Hardy from the residence hall or from the school's campus. *See Coventry, supra*, 630 F. Supp. 2d at 237 (determining that a jury could find deliberate indifference where Mary Doe had complained about treatment by her peers yet the school did nothing in response).

Finally, the record here shows that teachers and other administrators at Manor College viewed Jane Doe as a bothersome student and/or repeat emailer, which a jury in light of all of the surrounding circumstances, could find supportive of Ms. Doe's assertion of deliberate indifference on the part of the College. In October of 2016, President Peri sent Mr. Rice a note comforting him and telling him to report Ms. Doe if she continued to give him problems. After Jane Doe sent an email to her chemistry teacher about challenges she was facing in the wake of her alleged sexual assault, the teacher forwarded the email to Director of Student Engagement Ms. Mootz, and Ms. Mootz agreed that Ms. Doe was a "very challenging student. (I have close to 100 emails from her since this semester started.)" Ex. 56, Def.'s Mot. for Summary Judgment. The record shows Ms. Mootz was largely responsible for responding to Ms. Doe's initial complaint, and repeated communications seeking to appeal the determination made by the school on her sexual assault claim. In Manor College's letter evicting Ms. Doe permanently from the dorms, it cited "continued corresponden[ce] with individuals in and across the community instead of following institutional policies and procedures on how to properly address Code of Conduct concerns." Ex. 19, Def.'s Mot. for Summary Judgment. The letter also cites Ms. Doe's multiple previous sanctions, and Ms. Doe was warned that the school may take civil action against her if she continues in her inappropriate behavior. These facts could give rise to the inference that the school was deliberately indifferent to Doe's concerns related to hostility and her safety after making a complaint of sexual assault.[5]

---

[5]     The conclusion does not change despite Manor College's argument that it did not believe Ms. Doe's complaint of sexual assault. It specifically argues that because it did not credit Jane Doe's narrative and ultimately found no sexual assault had taken place, buttressed, it claims, by the fact that the Abington Police Department did not bring charges, it did not need to make accommodations for Ms. Doe's claims of fear. Manor College does not adequately address why this is part of the calculus. Nor should it be. *See, e.g.*, *E.N.*, *supra*, 2011 WL 3608544, at *3, 15, *report and recommendation adopted by* 2011 WL 3608490 (finding there to be a triable issue with respect to deliberate indifference, after the alleged assailant was

While these reasons suffice to reject Manor College's challenge to Ms. Doe's ability to demonstrate deliberate indifference, at this stage, the Court also addresses the parties' dispute with respect to whether the school acted unreasonably during its investigation of Jane Doe's complaint.

### iii. A jury could determine Manor College's investigations process was inadequate.

Again, the parties' arguments are serial. Ms. Doe cites to numerous examples of how she claims the school's investigation and hearings process failed to pass muster. *See, e.g.*, Pl.'s Opp'n, pp. 12-21. Manor College vigorously asserts its processes related to investigating, determining, and appealing the sexual assault finding were all proper, and it explains why. *See, e.g.*, Def.'s Memorandum of Law in Support of Def.'s Mot. for Summary Judgment, pp. 40-47. For example, Ms. Doe points to an alleged differential treatment of her from her alleged assailants after the Code of Conduct hearings. She contends that while Mr. Rice and Mr. Hardy were given details about how to appeal the school's determination in the school's formal letter informing the students about its determination, Manor College failed to include that same information in letters it sent to Ms. Doe conveying sanctions to her.

Ms. Doe also points to the lack of proper training of school administrators who handled her complaint. She claims "[a]lthough Manor policy states that the hearing is to be conducted by using a 'preponderance of the evidence standard,'" the members of the Code of Conduct Committee who oversaw Mr. Rice's and Mr. Hardy's hearings were unaware of the burden of proof. Pl.'s Opp'n, p. 9. Ms. Doe points to the deposition testimony of Janice Salerno, one of the school's administrators who was a voting member that served on the Committee at the two hearings, who testified she was unfamiliar with the burden of proof, and furthermore, never given

---

found not guilty on the underlying sexual assault charge, where the school could have been said to have created a hostile school environment).

guidance on how to weigh evidence, stating "'it was just the group would talk afterward . . . if it was clear, that's usually how we made a decision . . . if it was just so obvious that they admitted that they did it then the Committee would sanction the student." *Id.*, p. 10 (citing Salerno Dep., Ex. 39, Def.'s Mot. for Summary Judgment at 22-24; 49). Ms. Doe also cites the deposition testimony of Diane Saridakis who also served as a voting member of the committee, who testified that no guidance was given on how to evaluate the evidence at the hearings. Saridakis Dep., Ex. 38, Def.'s Mot. for Summary Judgment at 27:17-3:12.[6]

An inference, while not the only inference, can be made that the way in which Manor College conducted its investigation of the underlying sexual assault complaint was sufficiently flawed such that Manor College acted with deliberate indifference to Ms. Doe's initial complaint of sexual assault. *See, e.g., G.C. ex rel. Counts v. North Clackamas Sch. Dist.*, 654 F. Supp. 2d 1226, 1238-39 (D. Or. 2009) (The "failure to ensure that [administrators or teachers], received training in handling reports of sex abuse, could be viewed by a reasonable juror as evidence that the District does not take such allegations with the seriousness such allegations deserve.")

Moreover, Manor College's argument that as a matter of law, a theory of "biased," "faulty," or "sham" investigations or hearings is not cognizable when a plaintiff pursues a deliberate

---

[6]     Jane Doe also takes issue with the alleged deficient training of Ms. Prokopovych, the Chair of the Code of Conduct Committee, who was present at the conduct hearings. She asserts that by Ms. Prokopovych's own concession, she testified that she did not remember sitting in on a single hearing before transitioning into the role of the chair. She also testified to handling no complaints of sexual assault prior to Jane Doe's. *Id.*, p. 10-11 (citing Prokopovych Dep., Ex. 12, Def.'s Mot. for Summary Judgment at 16:16-21; 43-44). Ms. Prokopovych shadowed the Dean of Students, Sister Walchonsky, who Ms. Mootz testified had a difficult time stomaching sexual assault claims, or even the word sex. Despite the deficiency in Ms. Prokopovych's training, she then trained Ms. Salerno before Ms. Salerno participated in a single Code of Conduct hearing, by way of a conversation. Salerno Dep., Ex. 11, Pl.'s Mot. for Summary Judgment at 16-17. Ms. Sidarkis also testified to never undergoing any training specific to her role on the conduct committee. Sidarkis Dep., Pl.'s Ex. 12 at 23:20-24:15.

indifference claim, fails.[7]  Federal courts have recognized that deliberate indifference claims can reach a "flawed" hearings theory.  Thus, it cannot be said that as a matter of law, such a theory is not cognizable when a plaintiff sets forth a deliberate indifference claim. *See Ross v. Univ. of Tulsa*, 180 F. Supp. 951, 970 (N.D. Ok. 2016) ("Ross has not cited a Title IX case discussing a 'sham process' theory of deliberate indifference to a report of sexual violence.  However, the Court finds no reason to disallow such a theory so long as there is sufficient evidence to support it.  Intentionally biased student conduct proceedings, or clearly unreasonable methods of handling student reports of sexual violence, seem to fit within the parameters of Title IX[.]")  For example, in *Doe v. Forest Hills School District*, No. 13-428, 2015 WL 9906260 (W.D. Mich. March 31, 2015), the district court determined there was a triable issue of fact with respect to the plaintiff's deliberate indifference claim where a jury could find that her school engaged in an insufficient and untimely investigation, in part because the school conducted a limited investigation into the initial report of sexual assault, as well as failed to consider witness statements and other evidence that related to plaintiff's account of the sexual assault. *Id.* at *11.[8]  Thus, the Court finds that Manor

---

[7]    In support of its position, Manor College states that typically, cases involving the theory that a Title IX procedure was flawed involve plaintiffs who have been accused of misconduct.  "When such cases are brought, alternate theories are utilized, including the erroneous outcome and selective enforcement theories under Title IX, and breach of contract pursuant to state law." *Id.*, p. 34.  Because Ms. Doe chose only to pursue a deliberate indifference claim, according to the College, Ms. Doe cannot challenge the way in which Manor College investigated her complaint of sexual assault.

[8]    The case law offered in support of Manor College's position is unpersuasive.  For example, the school states that in *Doe v. The Trustees of the University of Pennsylvania*, 270 F. Supp. 3d 799 (E.D. Pa. 2017), the district court noted "courts across the nation have expressed serious skepticism that deliberate indifference claims can be brought to challenge disciplinary proceedings[.]" Def.'s Memorandum of Law in Support of Def.'s Mot. for Summary Judgment, p. 35.  However, even the *Trustees Court* engaged in an analysis of the merits of plaintiff's deliberate indifference theory with respect to the sexual assault hearing. *See id.* at 825-826.  Additionally, Manor College has failed to inform this Court that the Third Circuit Court of Appeals reversed the decision it cites in *Doe v. University of Sciences*, No. 19-358, 2019 WL 3413821 (E.D. Pa. July 29, 2019).  Even more, in *University of Sciences*, while addressing a Rule 12(b)(6) motion, the district court expressly noted "it need not decide whether deliberate indifference is ever viable to

College has failed to meet its burden of showing that Title IX deliberate indifference claims, where the purpose of Title IX is to reach sex-based discrimination at institutions receiving federal funding, does not encompass conduct related to deficient or flawed investigations or hearings.[9]

      *b.  The causation dispute.*

Manor College also contends Ms. Doe has failed to show causation, namely, that its deliberate indifference caused or made her vulnerable to harassment. It states that Jane Doe does not assert that the assailants harassed her, but only that their friends did, and again, as a matter of law, bullying and maliciousness are not cognizable harassment. That is, the harassment had nothing to do with Jane Doe's sex or gender.

The Court rejects the school's contentions in this regard. In the Court's view, and as Ms. Doe aptly points out, "[w]hen a student reports a sexual assault, or she experiences harassment because of her report of a sexual assault, it is sex-based[.]" Pl.'s Opp'n, p. 8. A factfinder could determine that in the context of Ms. Doe's assault allegation, she was harassed, by way of incident reports for instance, because of her report of sexual assault and/or because she made a complaint about Mr. Rice and Mr. Hardy specifically. As a matter of law, the Court cannot say, under these circumstances, that the contacts and alleged hostility from Ms. Doe's peers failed to amount to sexual harassment. *See Doe v. East Haven Bd. of Educ.,* 200 F. App'x. 46, 48 (2d Cir. 2006)

---

challenge university disciplinary proceedings because, even assuming it is, Doe's claim is deficient." *Id.* at *8.

[9]      The Court also views the multitude of nuanced factual disputes with respect to the deliberate indifference element the quintessential example of when material factual disputes lie. Moreover, to the extent that Ms. Doe makes contentions that sound as if she is calling Manor College a liar, *see* Pl.'s Opp'n, pp. 19-21, the Court addresses these arguments in footnote 12, *infra.* With respect to Manor College's argument that "[t]he Theory of Deliberate Indifference Does Not Apply to Violations of Title IX Regulations," the Court need not address this argument. Def.'s Memorandum of Law in Support of Def.'s Mot. for Summary Judgment, p. 38. Neither Jane Doe's complaint nor her motion papers address whether she seeks to prove Manor College violated Title IX in part by failing to adhere to administrative requirements. Thus, the arguments as to the issue are not fully set forth and not ripe for the Court's consideration.

("Although we recognize that name-calling in school which implicates a student's sex does not itself permit an inference of sex-based discrimination, ... we cannot exclude the possibility that such name-calling in the context of a reported rape constitutes sexual harassment.").

For all of these reasons, the Court denies Manor College's motion for summary judgment as to Jane Doe's discrimination claim.

## II.    Retaliation under Title IX

With respect to Ms. Doe's retaliation claim, the parties each seek summary judgment for varying reasons. Manor College seeks summary judgment because it contends Ms. Doe has failed to meet the prima facie elements of her case, as well as failed to show pretext.  Jane Doe argues she has met her burdens on all prongs of her case, regardless of whether she has done so via direct or circumstantial evidence.  At oral argument, the parties clarified their positions as to issues relevant to the analysis here. The Court discusses them below, and addresses the remaining disputes, in turn.  For the reasons that follow, the Court will permit the retaliation claim to proceed.

### a.  Legal Standard

To establish a *prima facie* case of retaliation under Title IX, a plaintiff must show that: (1) she engaged in activity protected by Title IX; (2) she suffered an adverse action; and (3) there was a causal connection between the two. *Doe v. Mercy Catholic Med. Ctr.,* 850 F.3d 545, 564 (3d Cir. 2017).   The parties agree that the familiar Title VII framework applies to the Court's analysis of the Title IX claim.  If Jane Doe can satisfy the elements of the prima facie case, the analysis then diverges depending upon the type of evidence available. *See Atkinson v. Lafayette Coll.*, 653 F. Supp. 2d 581, 594 (E.D. Pa. 2009) (citation omitted).  "Where there is direct evidence of retaliation, the defendant must demonstrate, by a preponderance of the evidence, 'that it would have reached the same decision' absent Plaintiffs' protected conduct.'" *Id.*  If there is only

circumstantial evidence of retaliation, the familiar burden-shifting framework with respect to a pretext case applies. *Mercy Catholic Med. Ctr.,* 850 F.3d at 564.

In the latter scenario, after the plaintiff has made out a prima facie case, the burden shifts back to the defendant to articulate a legitimate, non-retaliatory reason for the adverse action. If the defendant carries that burden, the burden shifts back to the plaintiff to prove that the legitimate reason was not the defendant's true reason. Rather, the true reason was retaliation. Although the burden of *production* shifts under this analysis, the burden of *proof* always stays with the plaintiff. *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir. 1994). Thus, the Court first determines if there are triable issues with respect to the elements of Ms. Doe's prima facie case and whether Ms. Doe has proffered any direct evidence of retaliation.

### b. *Whether plaintiff engaged in protected activity.*

#### i. Parties' arguments

Manor College contends that only Ms. Doe's initial complaint of sexual assault is protected activity. It asserts that any other assertions of protected activity outside of her initial complaint do not explicitly reference gender or sex, and amount, at best, to complaints of unfair treatment, not protected activity. Def.'s Mot., p. 56; Def.'s Memorandum of Law in support of Mot. for Summary Judgment, pp. 54-55.

Ms. Doe asserts she engaged in protected activity not only by way of her initial complaint but also in other ways. She represents she also engaged in protected activity when she challenged how Manor College treated her complaint; when she sought reconsideration of the Code of Conduct Committee's findings regarding the claim of sexual assault and distribution of a lewd photo; questioned the adequacy and fairness of the Code of Conduct hearings and asked for help because she did not feel safe on campus; asked for academic support and accommodations; and

26

sought outside review of the college's treatment of her.  Compl., ¶¶ 115-19.  Ms. Doe also cites the many communications she sent to the school objecting to the treatment of her complaint.

ii.  Discussion

Protected activity extends beyond formal complaints and includes "informal protests of discriminatory . . . practices," "making complaints to management" or administration, "writing critical letters," "protesting against discrimination by industry or society in general," and the like. *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006).  That is, explicit opposition to discrimination is not necessary, "[s]o long as it is 'possible to discern from the context of the statement" that an individual opposed an unlawful practice." *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 374 (W.D. Pa. 2008) (citing *Curay-Cramer*, 450 F.3d at 135-36); *see also Curay-Cramer, supra*, 450 F.3d at 135 ("When deciding whether a plaintiff has engaged in opposition conduct, we look to the message being conveyed rather than the means of conveyance.").  To that end, however, "not every complaint about unfair practices or perceived slights qualify as 'protected activity.'" *Isler v. Keystone Sch. Dist.*, No. 07–1335, 2008 WL 3540603, at *9 (W.D. Pa. Aug. 12, 2008), *aff'd*, 335 Fed. Appx. 200 (3d Cir. 2009).

Here, the dispute is not as to whether Jane Doe engaged in protected activity with respect to her initial complaint of sexual assault.  Rather, it is with respect to Ms. Doe's assertion that she engaged in protected activity when she made complaints about the school's response to her allegation of sexual assault.  At this time, the Court finds there is no dispute of material fact with respect to whether Jane Doe ever engaged in protected activity.  Even when viewed in the light most favorable to both parties, with respect to each opponent's motion, the Court finds that Jane Doe engaged in protected activity outside of her initial sexual assault complaint, at the very least, when she made complaints about the school's response to her complaint of sexual assault.  This is

not to say that the parties may not dispute which specific instances of communications Ms. Doe made actually constitute such protected activity. However, the burden of meeting a plaintiff's prima facie case is not high. Consequently, the Court will grant Ms. Doe's motion for summary judgment on this element of her prima face case.

### c. Adverse action

An adverse action is one that "well might have dissuaded a reasonable [person] from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56-58 (2006). As to adverse action, Ms. Doe contends that Manor College "took multiple, documented, uncontroverted adverse actions against [her] when it evicted her from the dormitory, demanded she move off campus in 24 hours, sanctioned her with monetary fines and community service, required her to attend counseling sessions, and threatened her with legal action." Pl.'s Mot. for Summary Judgment, p. 15. Manor College does not appear to dispute these actions as adverse action. Rather, Manor College only asserts to the extent that Ms. Doe relies on an allegation that the sexual assault hearing was unfair or defective, such conduct cannot meet the second element of her prima facie case. At oral argument, counsel for Ms. Doe clarified that Ms. Doe does not rely on this theory of adverse action. Thus, the Court finds there is no triable issue with respect to this prong, and grants Jane Doe's motion for summary judgment as to adverse action.

### d. Causation

With respect to causation, the parties dispute whether Jane Doe has offered direct evidence of causation, or only circumstantial evidence. Thus, determining whether there are triable issues with respect to this element, and if so, to what extent, depends in part on whether the Court finds Jane Doe has presented direct evidence of retaliation.

i. Direct evidence of causation.

Ms. Doe argues the following actions were taken by the president of the college, Mr. Peri, and these actions show direct evidence of the causal connection between her protected activity and the adverse actions Manor College took.

- On December 31, 2016, Mr. Peri threatened Ms. Doe with civil legal action after she contacted the school to process the return of her dorm room deposit.

- Manor College threatened Ms. Doe with civil action when she was evicted from her dormitory, citing her communications campus-wide.

- In the same email in which Mr. Peri responded to the U.S. Department of Education Office for Civil Rights ("OCR") during its investigation, he inquired into whether the College could sue Doe for a bad-faith complaint.

- When Ms. Doe retained counsel to assist her in her claims against the college, Mr. Peri responded to the attorney's engagement by expressing the following: "I can assure you that Manor College will do everything in its power to show any court of law that [Ms. Doe's] claims are wholly frivolous. Manor College will also bring whatever civil actions are necessary to evidence your client's frivolous claims, and by virtue of your representation *your* frivolous [assertion of Doe's Title IX claims]."

Pl.'s Mot. for Summary Judgment, pp. 17-21. Ms. Doe also points to the refusal to allow use of the audio recording in the Code of Conduct hearings, and a more general "pattern of threats and open hostility" as direct evidence of causation.

The Court finds that Ms. Doe has not presented direct evidence. "Direct evidence means evidence sufficient to allow the jury to find that the decision makers placed substantial negative reliance on [the protected activity] in reaching their decision to [take adverse action]." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 147 n.10 (3d Cir. 2004). It is evidence that does not require any process of inference to prove an ultimate fact in the case, save inferences of credibility. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 930 (3d Cir. 1997).

First, Ms. Doe has mischaracterized some of the proofs she asserts as showing direct evidence of retaliation.

29

Second, each proof proffered requires an inference in order to come to the ultimate conclusion that any "protected activity" was the cause of the adverse action.

For example, in the letter dated November 18, 2016, in which Manor College required Ms. Doe to move out of her dormitory, the school cites Ms. Doe's multiple sanctions as the basis for the eviction. It cites "continued correspond[ence] with individuals in and across the community instead of following institutional policies and procedures on how to properly address Code of Conduct concerns," and Ms. Doe's use of "prolific, harassing and potentially slanderous or libel[o]us communications across [the] institution." Ex. 19, Pl.'s Mot. for Summary Judgment. The letter further provides the potential basis for the school's consideration of civil remedies against her. While the language in the letter may indeed be harsh, ultimately, an inference is required to determine which communications the school is specifically referring to that may constitute protected activity. The Court notes that Manor College has cited to communications Ms. Doe made to the school that appear to have nothing to do with Ms. Doe's asserted protected activity.[10]

As another example, with respect to the communication to Jane Doe's attorney, the full context of the communication shows that Mr. Peri reached out to Ms. Doe's counsel because he had just been informed of Ms. Doe's alleged attempts to bribe students in support of her civil action. For this reason, an inference can be made that that is the reason why he called Ms. Doe's

---

[10]    For example, Manor College cites to an email between Jane Doe and her professor as an example of the kind of prolific emailing Jane Doe engaged in. Ex. 1, Def.'s Response to Pl.'s Mot. for Summary Judgment. The email itself does not reference her sexual assault complaint or her concerns related to her treatment after she made the complaint. The school also contends that it used the term "potentially libelous," in part, because in an email to Ms. Gillespie, Ms. Doe indicated she filed an appeal of her sexual assault determination because "the police had gotten involved and this is an illegal case of sexual assault." Ex. 45, Def.'s Mot. for Summary Judgment. According to Manor College, Ms. Doe was told to stop perpetuating misrepresentations across the school because the police in fact never determined a sexual assault had occurred.

case frivolous, as well as why he made assurances as to utilizing civil recourse to protect the school's interest. The Court determines that because an inference, for all the evidence Ms. Doe cites, is required to reach the conclusion that the school or Mr. Peri engaged in adverse action in substantial reliance on her protected activity, such evidence is not direct evidence of causation.[11]

### ii. Does the circumstantial evidence create a triable issue as to causation?

However, the evidence offered above, as well as other proofs proffered by Jane Doe demonstrate *circumstantial* evidence of causation. A Title IX plaintiff may demonstrate causation in three ways: (1) by way of temporal proximity between the adverse action and the protected activity, (2) by showing a "pattern of animus" after the protected activity; or (3) "by other circumstantial evidence concerning the" school's motivation, including "inconsistent reasons given" by the school or its treatment of others. *Atkinson*, 653 F. Supp. 2d at 603 (citing *Theriault v. Dollar Gen.*, 336 F. App'x 172, 174-75 (3d Cir. 2009)).

Here, the record reflects sufficient temporal proximity exists between the first complaint of sexual assault and the repeated complaints and concerns Ms. Doe made thereafter, and repeated sanctions lodged against her. The following timeline of events exemplifies this proximity.

- Jane Doe made her initial complaint of sexual assault on September 21, 2016.
- A couple days later, she was written up and later sanctioned for disorderly conduct related to altercations with girls in her residence hall.

---

[11] Moreover, the non-binding cases Ms. Doe cites do not support her position. *See, e.g.*, *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 709 (7th Cir. 2011) (finding direct evidence of causation where the plaintiff had made previous complaints of racial discrimination and a former supervisor decided to terminate the plaintiff in the same conversation that the supervisor mentioned the plaintiff was again "playing the race card . . . [and] this was the last straw"); *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003) ("[P]laintiff's tendered evidence is not direct because, even if it were believed, it would not require the conclusion that defendant retaliated against plaintiff; rather, one would draw that conclusion only by making a series of inferences arising from plaintiff's evidence.").

- After the Code of Conduct Committee told Jane Doe that it found the two men did not sexually assault her, beginning on September 29, 2016, Jane Doe communicated her disagreement with the assault determination to the college.

- On October 4, 2016, three days after Ms. Doe lodged an official appeal of the sexual assault decision, she was found to have violated the Code of Conduct for her audio recording.

- Manor College sanctions Ms. Doe for additional misconduct, and eventually dismisses her from the College on November 18, 2016.

- All this activity takes place over the course of less than two months from her initial complaint, and within days or weeks of Jane Doe raising additional objections to the College's response to her initial complaint as well as its failure to make accommodations for Ms. Doe.

In addition to temporal proximity, Ms. Doe has pointed to evidence of alleged hostility, including the numerous sanctions she endured, alleged student-on-student harassment and lack of accommodations, and purported threats from the college, such that a factfinder could determine that the hostility was due to Ms. Doe's protected activity. Perhaps a jury could read the November 18, 2016 letter evicting Ms. Doe from her dormitory as such evidence, in light of another email from Ms. Mootz stating the letter dismissing Jane Doe from the dormitory would be given later that day. That second, earlier letter states Ms. Doe "came to my office . . . and was quite aggressive again. We also found out that she has been in contact with another employee, [a campus ministry representative] regarding the situation and has continued to state that we are unsupportive." Ex. 18, Pl.'s Mot. for Summary Judgment. From these facts, an inference could be made that the eviction was not based on prior sanctions, as it states, or that the other sanctions were based on

bad behavior, but on Ms. Doe's repeated complaints about the treatment of her assault claim to the school.[12]

But, that is not the only inference that can be made from the letters. Manor College has otherwise pointed to legitimate reasons for the actions it took, including that it sanctioned Ms. Doe for misbehavior. Consequently, the Court finds that the issue of causation must go to a jury.[13]

e. Pretext

Finally, the Court addresses whether there are triable issues related to Ms. Doe's pretext claim. At trial, she must "convince the factfinder both that the [school's] proffered reason was pretext, and that retaliation was the real reason for the adverse [ ] action." *Collins v. Kimberly-Clark Pa., LLC*, 247 F. Supp. 3d 571, 597 (E.D. Pa. 2017), *aff'd*, 708 F. App'x 48 (3d Cir. 2017). Thus, to survive summary judgment on this prong, the parties must each produce sufficient evidence such that a jury could either find that retaliation was the real reason for the adverse action or no evidence exists to rebut Manor College's legitimate reasons for sanctioning Ms. Doe. For the same reasons that the Court determines there are triable issues with respect to the prima facie element of causation, there are also material factual disputes with respect to pretext. In considering

---

[12]    Ms. Doe also relies on Manor College's reporting data under requirements set forth by the Clery Act, 20 U.S.C. § 1092, *et seq.* as well as the alleged treatment of similarly situated sexual assault victims in an attempt to demonstrate circumstantial evidence of retaliation (and of discrimination). The Court need not address the merits of this proffered evidence at this time, but cautions the implied inference Ms. Doe seeks to make with this evidence. On multiple occasions, including on this one, Ms. Doe has sought to paint the picture that the school, through its representatives, is a liar. As set forth at oral argument, such accusatory language does not support, in this Court's negative view of such "advocacy," either of the parties' efforts here.

[13]    The parties do not appear to dispute whether Manor College has met its burden of production on proffering a legitimate, non-retaliatory reason for its actions. Nor does the Court find Jane Doe could plausibly contest Manor College has met its burden. Thus, under the *McDonnell Douglas* framework, the Court addresses next whether material factual disputes exist with respect to the pretext prong.

all of the circumstantial evidence proffered and record as a whole, inferences can be made to support both parties' positions on pretext.[14]

Manor College also offers comparator evidence contending that because others were sanctioned similarly to Ms. Doe, she cannot demonstrate pretext. The evidence itself cannot sustain Manor College's burden on its motion for summary judgment. Manor College's purported comparator evidence, *see* Ex. 61, Def.'s Memorandum of Law in Support of Def.'s Mot. for Summary Judgment, suffers from several flaws.

First, Manor College relies on a sanction related to a male student who took a photo during a sex act to show Jane Doe would have been sanctioned for her recording regardless of her report of sexual assault. But, Manor College's record proof that Jane Doe was sanctioned in the same way belies its contention. Ms. Doe claims she made a recording during an alleged coerced act. The record cited by Manor College shows the man took the photograph during a consensual sex act. The man is not a sufficient comparator. *McCormick v. Allegheny Valley School*, No. 06-3332, 2008 WL 355617, at *11 (E.D. Pa. Feb. 6, 2008) ("[F]or fellow [alleged comparators] to be considered similarly situated, they must have 'engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the[ir] . . . treatment . . . for it.'")

Second, the remainder of the comparator evidence is unavailing. Manor College provides a chart that lists the year in which a student was sanctioned, for what alleged violation they were sanctioned, and what they were sanctioned with. But the chart is not helpful because it provides

---

[14]    This is so, even under Manor College's purported but-for burden of persuasion under the pretext prong. *See* Def.'s Mot. for Summary Judgment, p. 71 (Manor College advocating "to prove causation at the pretext stage, the plaintiff must show she would not have suffered the adverse action 'but for' her protected activity."; "Doe must also demonstrate that the 'unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the' college.") For this reason, the Court need not address at this time whether Ms. Doe must prove causation at trial on the basis of a but-for standard.

no additional information with respect to the circumstances under which the school sanctioned the students. For example, was the student also a "victim" of some sort? Did he or she complain about the school's response to a complaint? Did the student engage in prior misconduct? Manor College's characterization of the data is not enough. The facts themselves must give some support to those characterizations. The questions left by the purported comparator evidence, as presented, require the Court to speculate as to their import. At this time, if credited, the only fact the charts show is the fact of the college disciplining its students, nothing more. Consequently, the Court rejects Manor College's current comparator argument.

For all these reasons, the Court determines that Ms. Doe's retaliation claim must be decided by a jury.

### III.   Motion in limine

As to Ms. Doe's motion in limine, during oral argument, the Court denied Ms. Doe's motion. Citing to Federal Rules of Evidence 403 and 702, Ms. Doe asserts that the testimony of Defendant's expert, Stephen Mechanick, M.D.,[15] must be precluded. Dr. Mechanik is a psychiatrist who was tasked to evaluate Ms. Doe's psychiatric condition, including her condition as it relates to her allegations in the complaint. The Court provided the general parameters in which Dr. Mechanik's testimony may be relevant. Thus, for the reasons set forth on the record, the Court denies Ms. Doe's motion without prejudice.

### CONCLUSION

By way of the parties' advocacy, they have evidenced the severity of the allegations at issue in this case. However, the Court's task today is not to evaluate the seriousness of the averments, but the factual sufficiency of them. For the reasons set forth in this Memorandum, the

---

[15]      Dr. Mechanik performed Ms. Doe's Rule 35 psychiatric examination.

Court will permit both of Ms. Doe's claims to proceed to trial. Both parties have raised triable issues with respect to the Title IX claims, such that a factfinder must ultimately determine the validity of Jane Doe's causes of action. Consequently, the Court grants in part and denies in part the cross-motions for summary judgment. The Court also denies without prejudice the motion in limine. An appropriate order follows.

BY THE COURT:

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**