# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                        |   |                  |
|------------------------|---|------------------|
| **JANE DOE,**          | : | **CIVIL ACTION** |
| *Plaintiff*            | : |                  |
|                        | : |                  |
| **v.**                 | : |                  |
|                        | : |                  |
| **MANOR COLLEGE,**     | : | **No. 18-5309**  |
| *Defendant*            | : |                  |

## MEMORANDUM

PRATTER, J.                                                    FEBRUARY 22, 2022

In this Title IX case, Jane Doe sued Manor College, claiming that the College discriminated and retaliated against her when it issued 13 different sanctions against her after she reported an alleged sexual assault, culminating in her removal from the College dormitory. One of those sanctions was for Ms. Doe taking an audio recording of the alleged assailants during the assault, which school administrators thought illegal. Ms. Doe contended that the Court, either by way of a jury instruction or an evidentiary use of judicial notice, should inform the jury about a Pennsylvania law that can allow an otherwise illegal taping.

This litigation concerned whether the school discriminated against Ms. Doe under Title IX, not whether the alleged sexual assault actually happened. A jury instruction on the legality of the audio recording based on whether Ms. Doe reasonably suspected a violent crime was about to take place would have risked confusing the issues and misleading the jury. Ms. Doe had other mid-trial methods for presenting this information to the extent it could have been relevant to a disputed issue. The Court thus declined to issue a jury instruction or take judicial notice of the three Pennsylvania wiretapping statutes.

1

## BACKGROUND

Ms. Doe brought a Title IX action against Manor College based on its response to her report of on-campus sexual harassment, including an alleged sexual assault. Ms. Doe alleged that Manor College was deliberately indifferent to her complaints and retaliated against her by removing her from the College dormitory. Manor College responded by asserting that her removal from the dormitory was not due to her complaints about an alleged sexual assault, but rather her various violations of the school's Code of Conduct between September and November 2016. The cited violations included "[i]llegal audio recording without permission," disorderly conduct, disrespect for authority, failure to appear for a hearing, and a guest policy violation. Pl.'s Ex. 106, at 36 (Dep. Ex. 30).

Ms. Doe's proposed jury instruction on this issue focused on the first of 13 Code of Conduct violations, for her "illegal" audio recording. This recording is one that Ms. Doe took with her cell phone at the beginning of the alleged sexual assault. Though the audio recording was mentioned at trial, Ms. Doe never introduced the recording.

As part of their investigation at the time of Ms. Doe's report, Manor College administrators formed the opinion that the audio recording was illegal under Pennsylvania wiretapping law because Ms. Doe did not have her alleged assailants' permission to take the audio recording. At the time Ms. Doe was sanctioned for the audio recording, she knew of, but did not contest, Manor's assessment. She was not charged for violating the state criminal law and there was no police investigation concerning the audio recording.

At trial, Ms. Doe argued that her audio recording was in fact legal under Pennsylvania law. Pennsylvania is a "two party" state that requires consent to record another. But this rule has many exceptions, including when a "person is under a reasonable suspicion that the intercepted party is

committing, about to commit or has committed a crime of violence and there is reason to believe that evidence of the crime of violence may be obtained from the interception." 18 Pa. Stat. § 5704(17). Based on this argument, Ms. Doe proposed the following jury instruction:

> In Pennsylvania, it is unlawful to audio record a person without their consent; however, it is not unlawful, and no prior consent is needed, for a victim to audio record a person when the victim believes that person is about to commit or has committed a crime, including sexual assault. [citing 18 Pa. Cons. Stat. Ann. § 5702(1)(ii), 18 Pa. Cons. Stat. Ann. § 5704(17)].

Doc. No. 85, at 12.

The Court held a conference with counsel on February 9, 2022 to finalize the jury instructions, at the end of the third day of trial. At the conference, counsel for Ms. Doe requested, for the first time, that the Court take judicial notice of three Pennsylvania statutes related to the exception to the statute prohibiting recording without consent. Specifically, Ms. Doe requested judicial notice of portions of three Pennsylvania statutory provisions (hereinafter, "the three state wiretapping statutes"): 18 Pa. Cons. Stat. § 5704(17) (exception for crime of violence); 18 Pa. Cons. Stat. § 5702 (defining "crime of violence"); and 18 Pa. Cons. Stat. § 3125 (defining "aggravated indecent assault").[1]

Manor College objected to the Court taking judicial notice of the statutes, arguing that it is not proper for the Court to take judicial notice of a statute in this scenario and that the statutes involved a distracting side issue. Ms. Doe submitted a brief on February 9, 2022 in support of her request for judicial notice of the state wiretapping statutes. The Court ruled against Ms. Doe on this issue at the conference and now more fully explains that decision.

---

[1] The second and third statutes, defining "crime of violence" and "aggravated indecent assault", are lengthy. Each includes multiple subparts and references to other statutory provisions.

## LEGAL STANDARD

Federal Rule of Evidence 201 permits, and in some cases requires, judicial notice of "a fact that is not subject to reasonable dispute." Fed. R. Evid. 201(b). However, Rule 201 "governs judicial notice of an adjudicative fact only, not a legislative fact." Fed. R. Evid. 201(a). "Adjudicative facts are simply the facts of the particular case." Fed. R. Evid. 201, advisory committee's note to subdivision (a) of 1972 proposed rules. Adjudicative facts include, for example, the occurrence of a snowstorm, *see United States v. Davis*, 183 F.3d 231, 251 (3d Cir. 1999), a stock price on a given day, *see Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 600 n.3 (3d Cir. 2000), or geographical locations and boundaries, *In re Int'l Bldg. Components*, 159 B.R. 173, 180 (W.D. Pa. 1993). "Legislative facts, on the other hand, are those which have relevance to legal reasoning and the lawmaking process . . . [such as] the enactment of a legislative body." Fed. R. Evid. 201, note a.

A state statute is a quintessential legislative fact because it is the "enactment of a legislative body." Fed. R. Evid. 201, advisory committee's note to subdivision (a) of 1972 proposed rules; *see also Project Vote v. Kelly*, 805 F. Supp. 2d 152, 184 (W.D. Pa. 2011) ("Unlike adjudicative facts, which concern the particular parties before the Court, legislative facts relate to the content of the law itself."). Legislative facts are not addressed in Rule 201 and no Federal Rule of Evidence specifically "deals with judicial notice of 'legislative' facts." Fed. R. Evid. 201, advisory committee's note to subdivision (a) of 1972 proposed rules.

Courts presiding over jury trials typically do not take "judicial notice" of laws. "The phrase 'judicial notice' applies to facts, not laws" because "judges, not juries, determine what is the law." *United States v. Wynn*, 987 F.2d 354, 358 (6th Cir. 1993); *see also Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Judicial notice of legislative facts

4

. . . is unnecessary."); *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("[J]udicial notice is generally not the appropriate means to establish the legal principles governing the case."); *Lemieux v. Cwalt, Inc.*, No. 15-cv-77, 2017 WL 365481, at *1 (D. Mont. Jan. 25, 2017) ("[B]ecause these statutes, cases, and regulations are 'legislative facts' rather than 'adjudicative facts,' they are not appropriate for judicial notice.").[2]

DISCUSSION

Ms. Doe requested judicial notice and a jury instruction on three state wiretapping statutes. In order to analyze this request, the Court considers whether these statutes fit within the limited circumstances where a federal court should consider a state statute in a federal question case and whether, even if the state statutes are relevant and proper to introduce, they should not be introduced to the jury due to risk of confusion, misleading the jury, or unfair prejudice to the opposing party under Federal Rule of Evidence 403.

## I. This Is Not the Type of Federal Case in Which Judicial Notice of State Statutes is Appropriate

It is sometimes necessary to consider a state statute in a federal action. Though most obvious in diversity cases where the federal court must apply state law, state statutes are also implicated by federal question cases in limited circumstances, such as where federal statutes incorporate state substantive law (*e.g.*, the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1)) or where federal statutes *conflict* with state law.

---

[2] Modern case law on judicial notice of state statutes departs from case law from a century ago, when courts discussed the importance of judicial notice of state statutes from a federalism standpoint. In older cases, courts promoted judicial notice as "an evidentiary shortcut whereby courts could rely upon the law of other states without jumping through the evidentiary hoops of bringing the bound volumes into court and establishing their validity." *United States v. Dedman*, 527 F.3d 577, 586 (6th Cir. 2008). "Although [courts] used to allow judicial notice of state law, now . . . state law is simply a matter for the judge to determine." *Id.* at 587.

Each case that Ms. Doe cites in support of a federal court taking judicial notice of state statutes requires analysis of a state statute in precisely these limited circumstances.[3]  For example, in *O'Neill v. United States*, 411 F.2d 139, 143–44 (3d Cir. 1969), the Court of Appeals for the Third Circuit discussed the applicability of a state safety law establishing negligence *per se* as the basis for tort liability under the Federal Tort Claims Act because, under that statute, a federal court must apply state tort law.[4]  Similarly, in *LifeWatch Servs., Inc. v. Highmark, Inc.*, 509 F. Supp. 3d 356 (E.D. Pa. 2020), *aff'd*, No. 21-1142, 2021 WL 5492811 (3d Cir. Nov. 17, 2021), the court analyzed a preemption issue involving state and federal antitrust law and noted that "courts applying the [statutory provision] consider whether an actual conflict exists between the federal action and the state regulatory scheme."  In these limited circumstances, courts typically take judicial notice for their own determination of the applicable law.

---

[3]  The Court notes one outlier case, in *Dean v. Specialized Sec. Response*, 876 F. Supp. 2d 549, 556 (W.D. Pa. 2012).  In *Dean*, the court approved a jury instruction on a state law applicable to detective agencies in a Title VII employment case because "Defendant was entitled to present evidence to the jury tending to show that plaintiff was terminated because of an honest belief by the decision makers that Pennsylvania law required them to do so." *Id.* at 556.  The plaintiff did not oppose this jury instruction on the state law, but rather, objected to the court declining to *also* take judicial notice of the fact that the employer was not a detective agency and therefore not actually subject to the state law.  In fact, "[t]he evidence adduced at trial established beyond dispute that defendant was not licensed in 2008 . . . ." *Id.* at 557.  In other words, the (in)applicability of the law on which the employer relied was not subject to dispute.

Here, in contrast, it is not possible to resolve whether Ms. Doe's recording actually violated the state law or not.  In other words, the law's applicability or significance is contested. *See infra* Section II.a.  Further, as the *Dean* court noted in rejecting the plaintiff's proposed additional jury instruction, "[w]hether defendant correctly interpreted the [state] law is not the dispositive question." *Dean*, 876 F. Supp. 2d at 555.

[4]  This set of considerations also applied in another Third Circuit Court of Appeals case involving judicial notice of a state statute, *Gallup v. Caldwell*, 120 F.2d 90, 93 (3d Cir. 1941).  The *Gallup* court (1) relied on the older case law that focused on the federalism implications of judicial notice of state statutes (*Lamar v. Micou*, 114 U.S. 218 (1885)); (2) addressed a state statute directly at issue in the case because it determined whether the plaintiff was a legal shareholder in the state of incorporation for standing purposes ("we take judicial notice of the law of New Jersey in so far as it is applicable to the rights of the parties in this case"); and (3) took judicial notice for purposes of a motion to dismiss. *See also id.* (noting that "this court is called upon, in the exercise of its appellate jurisdiction, constantly to take notice of and administer the jurisprudence of all the states").

Here, the federal Title IX statute in no way implicates state wiretapping law. This is not one of the limited circumstances in which a state statute is relevant to determining the legal rights of the parties under the federal law at issue.

## II.     Rule 403 Considerations Counsel Against Judicial Notice of the State Statutes

Because no rule of evidence specifically addresses judicial notice of legislative facts, and assuming *arguendo* that the actual legality or illegality of the taping could be relevant to this suit, the Court analyzes Ms. Doe's request under the considerations outlined in Federal Rule of Evidence 403. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 403 counsels strongly against Ms. Doe's requested instruction via judicial notice for at least two reasons.

### A.  Confusion of the Issues and Misleading the Jury

Courts may exclude evidence that would confuse the issues or mislead the jury. *See United States v. Bullard*, 38 F. App'x 753, 754 (3d Cir. 2002) (noting that jury instructions should not confuse or mislead the jury). Here, strictly speaking, whether a sexual assault actually took place was not the issue before the jury in this Title IX lawsuit. In seeking judicial notice of an exception to Pennsylvania wiretapping law that could apply if she had "reasonable suspicion" of a violent crime, Ms. Doe sought to reintroduce the issue of whether a sexual assault, and thus, threat of such an assault, actually took place. This risked both confusing and misleading the jury in contravention of Rule 403.

First, introduction of portions of a criminal wiretapping law, violation of which Ms. Doe was not charged, risked confusing the issues before the jury in this case. Courts have declined to

take judicial notice of state regulations where the party at issue "was never charged with violating" the regulation and "it is disputable" whether the party actually violated the regulation. *United States v. Onyenso*, 615 F. App'x 734, 738 (3d Cir. 2015); *see also Pa. Dep't of Hum. Servs. v. United States*, 897 F.3d 497, 514 (3d Cir. 2018) (affirming district court's decision not to take judicial notice of a document because "[a]lthough the document appears to provide some support" for an argument made by the plaintiff, "such a conclusion is not indisputable" and "[i]n order to reach that conclusion, several related questions . . . must be answered as well").

Here, the parties did not present sufficient evidence for the jury to determine whether the elements of the state wiretapping statutes or their various exceptions were met. Because there was not a police investigation of Ms. Doe's audio recording and she was "never charged with violating" state wiretapping law, there are insufficient facts to answer the hypothetical of whether she did actually violate the law. *Onyenso*, 615 F. App'x at 738. And several related questions would need to be considered to determine the legality of Ms. Doe's audio recording under the state wiretapping statutes. As one example, the exception to which Ms. Doe sought to draw attention requires a "reasonable suspicion" that another is about to commit one of a certain category of crimes of violence. 18 Pa. Cons. Stat. § 5704(17). Yet the alleged assailants were not called as witnesses in this trial and the audio recording itself was not introduced, meaning the jury would have no basis upon which to make any inference or conclusion about the exception's applicability. Further still, the parties disputed whether Ms. Doe's initial reluctance to go to the police and the contents of her Manor College incident report and first signed police statement actually demonstrated that she did *not* view the events as a violent crime, an interpretation that would call into question the applicability of the exception.

8

Additionally, the lengthy state wiretapping statutes that Ms. Doe sought to introduce involve nuanced analysis for which the jury was not provided sufficient information. It would have been confusing to attempt to guide the jury through the technical statutory interpretation required to determine how three lengthy statutes full of cross-references interact and then, how they apply to the facts of this case.

Moreover, focusing on one particular exception would also have been misleading to the jury. If the Court focused on one exception in 18 Pa. Cons. Stat. § 5704, it would risk suggesting to the jury that the other exceptions left out did not apply. Indeed, the Court notes that other exceptions in 18 Pa. Cons. Stat. § 5704 (besides the one chosen by the plaintiff) might have applied. For example, there was an allegation that one of the alleged assailants took a Facetime video during the alleged assault. *See* Pl.'s Ex. 106, at 2 (Ms. Doe's Incident Report). Ms. Doe could have argued that the alleged assailant (by taking his own video) actually consented to recordings under another exception in the state statutes. *See* 18 Pa. Cons. Stat. § 5704(2)(ii). Each of these potential applications of the state wiretapping statutes created the risk of requiring a separate mini-trial or several mini-trials that would have distracted the jury from whether Manor College violated Title IX, the actual issue in the case.

Finally, judicial notice of the state wiretapping statutes posed a risk of confusing the issues and misleading the jury into believing that Ms. Doe's violation or non-violation of state wiretapping law was outcome-determinative in the actual Title IX case, which it was not. The jury might have improperly inferred that, if Ms. Doe's conduct was in fact illegal under the wiretapping statutes, she could not prove her claim under Title IX. Or the jury might have improperly inferred that, if Ms. Doe's conduct was *legal* under the wiretapping statutes, then Manor College necessarily acted in retaliation by applying an incorrect, yet honestly formed, interpretation of the

statutes. Either way, the distinct issue of whether the plaintiff herself engaged in illegal behavior is a misleading and confusing distraction to which the Court should not lend the weight of judicial notice.

### B. Risk of Unfair Prejudice to Manor College

Ms. Doe's request for judicial notice also risked unfair prejudice to Manor College due to the late-stage timing during trial and seeking the Court's imprimatur on one particular exception that would favor one side in the dispute.

#### 1. Prejudicial Timing

Courts consider whether the timing of a request for judicial notice raises potential prejudice to the opposing party. *See* Wright & Miller § 5110 ("Rule 201(f) empowers the court to take judicial notice at trial. Probably the last time this can be done without disrupting a jury trial is at the very beginning of the trial when the parties can adjust their cases to conform with the court's ruling."). Indeed, it is rare for a party to make a mid-trial or late trial request for judicial notice. *Id.*

Ms. Doe did not raise her request for judicial notice of the state wiretapping statutes until the end of the third day of trial. The issue of judicial notice did not appear in any of the parties' pretrial memoranda, trial memoranda, or motions *in limine*. Ms. Doe had completed all of her case-in-chief except Ms. Doe's own testimony, including all examination of the Manor College witnesses who were involved in deciding to issue the 13 sanctions against Ms. Doe, including the audio recording sanction. As a result, Manor College had already released several of its own administrators from testifying in the defense's case-in-chief because Ms. Doe called the administrators as witnesses and Manor College conducted its examination during Ms. Doe's case-

10

in-chief. Thus, there was clear danger of prejudice to Manor College in granting this late-stage request for judicial notice of the state wiretapping statutes.

### 2. *Prejudice of Court's Imprimatur on Exception*

Further, judicial recognition of the wiretapping exception for suspicion of criminal activity risks prejudice by providing "the unique imprimatur of the district court" on the relevance of the exception. *United States v. Mitchell*, 365 F.3d 215, 253 (3d Cir. 2004). While the Court here could have explained in detail to the jury that judicial notice of the existence of the exception did not mean the exception was necessarily applicable to Ms. Doe's conduct, the Court would still have appeared to place a special significance on that particular exception as being a "relevant" exception. And even then, this exercise still presented the risks discussed earlier of inviting the jury to engage in a mini-trial of the exception's possible applicability.

The issue central to this case was whether Manor College, at the time it imposed the "illegal recording" sanction on Ms. Doe, acted with discriminatory motive or instead honestly believed that the recording was in fact illegal. Ms. Doe had the opportunity to examine multiple Manor College administrators about their research (or lack of research) into the sanction and to probe whether their admitted lack of in-depth legal research indicated retaliatory intent. The lack of research could be relevant to intent regardless of whether an exception actually existed.

Ultimately, Ms. Doe did not utilize means less prejudicial than judicial notice to introduce the statutory exception that she believed applied. Ms. Doe asked one of the Manor College administrators whether he considered the specific exception for violent crime, but she did not seek to introduce the exception itself during that line of questioning. As the Court suggested, Ms. Doe could have probed the potential applicability of the exception further while examining multiple of her witnesses, rather than relying on judicial notice. She did not do so.

## CONCLUSION

For the foregoing reasons, the Court denied Ms. Doe's Proposed Instruction No. 8 and request for judicial notice of the state wiretapping statutes.  An appropriate Order follows.

BY THE COURT:

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**